UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

JUN 3 0 2005

MICHAEL N. MILBY, CLERK OF COURT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re DYNEGY, INC. SECURITIES LITIGATION | § § § | Master File No. H-02-1571 |
| | § | CLASS ACTION |
| | § | |
| This Document Relates To: | § § | |
| ALL ACTIONS. | § § | |
| | § | |

**LEAD PLAINTIFF'S COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT
OF EXPENSES**

# TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF THE PROCEEDING...........................................................1

II. SUMMARY OF ARGUMENT ......................................................................................1

III. ISSUES TO BE RULED UPON BY THE COURT AND THE STANDARD OF
REVIEW ........................................................................................................................5

IV. THE REQUESTED FEE SHOULD BE AWARDED BASED ON A
PERCENTAGE OF THE RECOVERY OBTAINED..................................................6

    A. Lead Plaintiff's Counsel Are Entitled to a Fee From the Common Fund
They Created ......................................................................................................6

    B. Fees in Common Fund Cases Should Be Based on a Percentage of the
Recovery ...........................................................................................................6

        1. The Supreme Court Has Repeatedly Held that Fees in Common
Fund Cases Are Properly Calculated Based on a Percentage of the
Recovery ...............................................................................................6

        2. A Majority of Courts of Appeal Have Approved the Percentage
Method ..................................................................................................8

        3. Numerous District Courts in This Circuit Have Used the
Percentage Method to Determine Reasonable Attorneys' Fees.................10

    C. Lead Plaintiff's Counsel's Percentage Fee Request Enjoys a "Presumption
of Reasonableness" .........................................................................................11

    D. The Requested Percentage is Fair and Reasonable and is Conservative
When Compared to Awards in Other Cases From This Circuit ...........................13

    E. A 8.7257 Percent Award Here Is Conservative in Comparison with Other
Pre and Post-PSLRA Securities Class Action Fee Awards ...................................14

V. THE REASONABLENESS OF THE PERCENTAGE FEE REQUESTED IS
CONFIRMED BY AN ANALYSIS OF THE *JOHNSON* FACTORS .............................15

    A. The Requested Percentage Fee Is Fair and Reasonable Based Upon an
Analysis of the *Johnson* Factors .........................................................................16

        1. Time and Labor Required ...................................................................16

        2. Novelty and Difficulty of the Issues ..................................................17

        3. The Skill Required to Perform the Legal Services Properly.....................18

**Page**

      4.     Preclusion of Other Employment.................................................19

      5.     The Customary Fee ......................................................................19

      6.     Whether the Fee Is Fixed or Contingent ......................................20

      7.     Time Limitations Imposed by the Client or Circumstances .....................21

      8.     The Amount Involved and Results Achieved .............................................21

      9.     The Experience, Reputations and Ability of the Attorneys ......................22

      10.    The Undesirability of the Case .................................................................22

      11.    Nature and Length of Relationship With the Client .................................22

      12.    Awards in Similar Cases.............................................................................23

VI.    THE REACTION OF THE CLASS CONFIRMS THAT THE REQUESTED FEE IS REASONABLE..............................................................................................23

VII.   IMPORTANT PUBLIC POLICY CONSIDERATIONS ALSO SUPPORT THE REQUESTED FEE AWARD ............................................................................23

VIII.  THE EXPENSES FOR WHICH REIMBURSEMENT IS SOUGHT WERE REASONABLY INCURRED AND SHOULD BE REIMBURSED ...........................24

IX.    CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

Page

*Anixter v. Home-Stake Prod. Co.,*
 77 F.3d 1215 (10th Cir. 1996) ................................................................20

*Backman v. Polaroid Corp.,*
 910 F.2d 10 (1st Cir. 1990) ................................................................20

*Basic Inc. v. Levinson,*
 485 U.S. 224, 108 S. Ct. 978 (1988) ................................................................23

*Batchelder v. Kerr-McGee Corp.,*
 246 F. Supp. 2d 525 (N.D. Miss. 2003) ................................................................11

*Bateman, Eichler, Hill Richards, Inc. v. Berner,*
 472 U.S. 299, 105 S. Ct. 2622 (1985) ................................................................23

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
 603 F.2d 263 (2d Cir. 1979) ................................................................20

*Blum v. Stenson,*
 465 U.S. 886, 104 S. Ct. 1541 (1984) ................................................................7, 19

*Boeing Co. v. Van Gemert,*
 444 U.S. 472, 100 S. Ct. 745 (1980) ................................................................6, 7

*Brantley v. M.F. Surles,*
 804 F.2d 321 (5th Cir. 1986) ................................................................6, 15

*Camden I Condo. Ass'n v. Dunkle,*
 946 F.2d 768 (11th Cir. 1991) ................................................................8

*Cent. R. R. & Banking Co. v. Pettus,*
 113 U.S. 116, 5 S. Ct. 387 (1885) ................................................................6

*Daubert v. Merrell Dow Pharms.,*
 509 U.S. 579, 113 S. Ct. 2786 (1993) ................................................................18

*Di Giacomo v. Plains All Am. Pipeline,*
 No. H-99-4137, 2001 U.S. Dist. LEXIS 25532
 (S.D. Tex. Dec. 19, 2001) ................................................................11

*Dura Pharms., Inc. v. Broudo,*
 __ U.S. __, 125 S. Ct. 1627 (2005) ................................................................18

Page

*Florin v. Nationsbank, N.A.*,
    34 F.3d 560 (7th Cir. 1994) ......................................................................8

*Foster v. Boise-Cascade, Inc.*,
    577 F.2d 335 (5th Cir. 1978) ..................................................................10

*Goldstein v. MCI Worldcom*,
    340 F.3d 238 (5th Cir. 2003) .............................................................17, 20

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ....................................................................8

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ..................................................................22

*Hensley v. Eckerhart*,
    461 U.S. 424, 103 S. Ct. 1933 (1983) ...................................................9, 21

*Herman & MacLean v. Huddleston*,
    459 U.S. 375, 103 S. Ct. 683 (1983) .........................................................24

*In re Apple Computer Sec. Litig.*,
    No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
    (N.D. Cal. Sept. 6, 1991) .........................................................................20

*In re Catfish Antitrust Litig.*,
    939 F. Supp. 493 (N.D. Miss. 1996) ...............................................11, 15, 24

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).............................................................3, 11, 12

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ....................................................................7

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).........................................................................8

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................3, 12, 13

*In re Ikon Office Solutions, Inc.*,
    194 F.R.D. 166 (E.D. Pa. 2000).........................................................14, 17

**Page**

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976) ........................................................................19

*In re Lucent Techs., Inc. Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) ......................................................................12

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...................................................................2

*In re Prudential-Bache Energy Income P'ship Sec. Litig.*,
    No. MDL 888, 1994 WL 150742 (E.D. La. Apr. 13, 1994) ...................................8

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005).......................................................................2, 3, 23

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993).............................................................................24

*In re Terra-Drill P'ships Sec. Litig.*,
    733 F. Supp. 1127 (S.D. Tex. 1990).......................................................................21

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995)......................................................................................8

*In re Warner Communications Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd*, 798 F.2d 35 (2d Cir. 1986) ........................................................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ..................................................................................8

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .........................................................................*passim*

*Johnston v. Comerica Mortgage Corp.*,
    83 F.3d 241 (8th Cir. 1996) ....................................................................................8

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ..................................................................................8

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
    487 F.2d 161 (3d Cir. 1973)....................................................................................7

**Page**

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
  540 F.2d 102 (3d Cir. 1976)..................................................................................7

*Longden v. Sunderman*,
  979 F.2d 1095 (5th Cir. 1992) ...........................................................................11

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375, 90 S. Ct. 616 (1970).....................................................................6

*Rawlings v. Prudential-Bache Props.*,
  9 F.3d 513 (6th Cir. 1993) ...................................................................................8

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) .........................................................................20

*Selection of Class Counsel*,
  208 F.R.D. 340 (Jan. 15, 2002)..........................................................................23

*Shaw v. Toshiba Am. Info. Sys.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000)............................................................. *passim*

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
  365 F.3d 353 (5th Cir. 2004) .............................................................................17

*Sprague v. Ticonic Nat'l Bank*,
  307 U.S. 161, 59 S. Ct. 777 (1939)..................................................................6, 7

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993)..........................................................................8, 10

*Trans World Airlines, Inc. v. Hughes*,
  312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971),
  *rev'd*, 409 U.S. 363 (1973).................................................................................20

*Trustees v. Greenough*,
  105 U.S. 527 (1882)..............................................................................................6

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) .........................................................................13

Page

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
     §78u-4 .................................................................................................................... 3
     §78u-4(a)(4) ........................................................................................................... 6
     §78u-4(a)(6) ..................................................................................................... 10, 24

Federal Rules of Civil Procedure
     Rule 52 .................................................................................................................. 6


**SECONDARY AUTHORITIES**

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
     §2.02 ..................................................................................................................... 7

Charles Silver, *Class Actions in the Gulf South Symposium: Due Process
and the Lodestar Method: You Can't Get There From Here,*
     74 Tul. L. Rev. 1809 (2000) ................................................................................ 9

Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar,
*Recent Trends IV: What Explains Filings and Settlements in Shareholder
Class Actions?* (NERA Nov. 1996) ........................................................................... 14

Jerold S. Solovy, Laura A. Kaster and James B. Sowerby, *Attorneys' Fees
in Common Fund Cases: The Percentage Method is Back, in Securities
Class Actions: Abuses and Remedies* (National Legal Center for the
Public Interest 1994) ................................................................................................. 16

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications
of Economic Theory for Private Enforcement of Law through Class and
Derivative Actions,*
     86 Colum. L. Rev. 669 (1986) ........................................................................... 10

*Manual for Complex Litigation* (3d ed. 1995)
     §24.12 .................................................................................................................... 7

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees* (October 8, 1985)
     108 F.R.D. 237 ..................................................................................................... 7

## I.     NATURE AND STAGE OF THE PROCEEDING

The parties in this case have settled and concurrently Lead Plaintiff seeks the Court's approval of the Settlement.[1] Counsel for the Lead Plaintiff in this securities class action (the "Litigation") respectfully submit this memorandum of law in support of their application for an award of attorneys' fees of just under 8.73% of the Settlement Amount (after the deduction of court approved reimbursement of out-of-pocket litigation expenses requested in the amount of $3,200,000).

## II.    SUMMARY OF ARGUMENT

The substantial recovery obtained for the Class – a recovery of $406,050,000 in cash, 17,578,781 shares of Dynegy common stock valued at $68,000,000,[2] plus the involvement of the Lead Plaintiff, The Regents of the University of California ("The Regents") in the selection process for the replacement of two director defendants of Dynegy, Inc. ("Dynegy" or the "Company") – was achieved through the skill, tenacity and effective advocacy of counsel for the Lead Plaintiff.[3]

---

[1]     Submitted herewith is Lead Plaintiff's Memorandum of Law in Support of Final Approval of Settlement and Plan of Allocation of Settlement Proceeds (the "Settlement Brief") and the Declaration of G. Paul Howes in Support of Final Approval of Class Action Settlement, Plan of Allocation, and Application of Lead Counsel for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Howes Declaration"), which more fully describes the history of the Litigation, the claims asserted, the investigation undertaken, the negotiation and substance of the Settlement, the substantial risks of the Litigation and the reasonableness of the fee request to which the Court is respectfully referred. Also submitted herewith are declarations from each firm which worked together with Lead Counsel setting set forth the time expended and expenses incurred in prosecuting the Litigation, and expert declarations (the "Silver Report" and the "Monks Declaration") and a declaration on behalf of the Lead Plaintiff in support of the settlement and fee application.

[2]     Lead Counsel seek a fee on each component of the Settlement; *i.e.*, the net cash and the pool of Dynegy stock.

[3]     All capitalized terms not defined herein have the same meanings as set forth in the Stipulations of Settlement dated as of March 10, and May 2, 2005 (the "Stipulations").

This fee request results from the fee "grid" negotiated between Lead Plaintiff and counsel at the beginning of Lead Plaintiff's involvement in the Litigation. The request is presumptively reasonable and well below the normal range of awards made in contingent fee matters of this type in this Circuit, as well as throughout the country, and is the appropriate method of compensating counsel for the substantial result they have achieved. This is especially true in light of the exceptional benefits obtained for the Class and the significant risks involved in bringing this Litigation. In *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298 (3d Cir. 2005), the Third Circuit recently cited with approval an analysis submitted by Professor John C. Coffee of Columbia University, in which he considered statistical data from other securities fraud cases and found: (1) a 31% average fee in securities class actions involving settlements over $10 million; (2) a 27-30% median range over the course of a two-year period in selected federal district courts; and (3) 25-30% fees were "'fairly standard'" in "'mega fund'" class actions. *Id.* at 298 (citation omitted).

The Regents, a large institutional investor with a significant financial stake in the outcome of the Litigation, is a paradigm fiduciary for the Class as envisioned by Congress when it enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA").[4] "[C]ourts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a

---

[4]     Congress enacted the PSLRA in large part to encourage institutional investors to assume control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." *See* H.R. Conf. Rep. No. 104-369, at 32 (1995), 1995 WL 709276, at *32 (Leg. Hist.), attached to the Compendium of Unreported Authorities Cited in Support of Final Approval of Settlement and Plan of Allocation of Settlement Proceeds and Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Compendium"), submitted herewith, at Exhibit 16; *see also In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999). Congress believed that institutions and other investors with a significant financial stake in the outcome of a securities class action would be in the best position to monitor the ongoing prosecution of the litigation, select counsel and to assess the reasonableness of counsel's fee request.

properly-selected lead plaintiff and properly-selected lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) ("[I]n class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable."). Here, the fee structure was agreed to at the beginning of the case, and the Lead Plaintiff, evaluating counsel's work now in retrospect, supports the requested fee. *See* the Declaration of James E. Holst of the University of California Regents in Support of Lead Plaintiff's Motion for Final Approval of Settlements and Award of Attorneys' Fees and Reimbursement of Expenses ("Holst Declaration"), submitted herewith. The fact that the fee structure was negotiated at the beginning of the case and later approved after the litigation settled should be given great weight. *Cendant*, 264 F.3d at 282. This standard was recently reiterated: "In *Cendant*, 264 F.3d 201, we noted, under the Private Securities Litigation Reform Act, the aim of the fee award analysis 'is not to assess whether the fee request is reasonable,' but 'to determine whether the presumption of reasonableness has been rebutted.'" *Rite Aid*, 396 F.3d at 301 n.10 (quoting *Cendant*, 264 F.3d at 284).

The Litigation is subject to the provisions of the PSLRA and, therefore, was extremely risky and difficult from the outset. 15 U.S.C. §78u-4. The practical effect of the PSLRA is to make it harder for investors to bring and successfully conclude securities class actions. Lead Plaintiff and its counsel were mindful of the fact that in this post-PSLRA environment, a greater percentage of cases are being dismissed than ever before amid defendants' attempts to push the envelope of the PSLRA.

The effort required also supports the fee requested. As described in the Howes Declaration, in the face of Defendants' formidable defense, counsel for the Lead Plaintiff marshaled considerable resources and expended substantial effort in the researching, investigating (including the ultimate analysis of over 1.2 million pages of documents and hundreds of witness interviews) and uncovering

- 3 -

detailed facts to meet post-PSLRA pleading requirements. The result of these efforts were detailed and fact-specific complaints specifying Defendants' violations of the federal securities laws that largely survived Defendants' motions to dismiss. After trial preparation was virtually complete, including the depositions of nineteen witnesses, the exchange of expert reports and substantial motion practice, and following arm's-length negotiations among the parties over many months, including numerous face-to-face meetings and mediation sessions with a highly respected mediator, the parties agreed to the principal terms of the settlement. Counsel for the Lead Plaintiff firmly believe that the Settlement obtained is an outstanding result for the Class, and is the result of the substantial, diligent and creative efforts of Lead Counsel.

Moreover, the fee is also fully justified by the exceptional result obtained for the class. This Settlement is the eighth largest achieved since the passage of the PSLRA and the second largest ever in this district, eclipsed only by the partial settlements announced so far in the Enron litigation.

The Litigation also posed significant risks for the Class with ultimate success far from certain. As discussed in greater detail in the Howes Declaration, Lead Plaintiff faced serious obstacles in establishing the elements necessary to prove liability and damages at trial. Defendants adamantly denied any knowledge of wrongdoing in connection with Project Alpha and argued that the Class had suffered little or no cognizable damages. At trial, Lead Plaintiff would face the risk that a jury would react unfavorably to the evidence presented and find in favor of Defendants. Considering these risks and the significant recovery that Lead Plaintiff's counsel have obtained for the Class, the percentage fee requested is fair and reasonable.

Moreover, the Class also appears to support the fee request. In accordance with this Court's Preliminary Approval Orders (the "Preliminary Approval Orders"), copies of the Notices of Pendency and Settlement of Class Action ("Notice") were mailed to more than 80,000 potential Class Members, summary notices were published in *Investor's Business Daily* and posted on the

- 4 -

Settlement Administrator's website.[5] The Notice described the Litigation and the proposed settlement, as well as counsel's intent to request an award of attorneys' fees of up to 9% of the Settlement Amount, and reimbursement of expenses not to exceed $3,200,000. The Notice also informed Settlement Class Members of the right to object to this application. There have been no proper objections to the requested award of attorneys' fees and expenses,[6] and the deadline for filing such objections expired on June 20, 2005.

In sum, in the face of substantial obstacles – in a case asserting claims predicated on complex legal and factual issues which were vigorously opposed by highly skilled and experienced defense counsel – Lead Plaintiff's counsel succeeded in securing an outstanding recovery for the Class. Lead Plaintiff's counsel submit that the percentage fee requested is fair and reasonable when considered under applicable legal standards and is the appropriate method of compensating counsel.

## III. ISSUES TO BE RULED UPON BY THE COURT AND THE STANDARD OF REVIEW

This Motion asks the Court to determine whether the requested fee award and reimbursement of expenses are "fair and reasonable," in light of (among other things) the factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), the agreement between Lead Plaintiff and its counsel, the circumstances of this case, and the presumption of reasonableness

---

[5]      *See* ¶¶3-6, 8, 15-18, 20 to the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action with Arthur Andersen LLP, and of Settlement Fairness Hearing and the Proof of Claim and Release Form; B) Publication of the Summary Notice; C) Mailing of the Notice of Adjournment of Settlement Fairness Hearing Date for Settlement with Arthur Andersen LLP; D) Mailing of the Notice of Rescheduled Fairness Hearing Date Regarding Settlement of Class Action with Arthur Andersen LLP; E) Notice of Pendency and Settlement of Class Action, Hearing on Proposed Settlement and Attorneys' Fee Petition and Right to Share in Settlement Fund and the Proof of Claim and Release Form; and F) Publication of Summary Notice ("Sylvester Decl.").

[6]      Lawrence Schonbrun, Esq., a repeat objector to attorneys' fee awards, sent a letter to the Clerk of the Court dated June 15, 2005 entitled "Conditional Notice of Objection." On June 27, 2005, in response to our motion to strike, this objection was withdrawn.

- 5 -

to which Lead Plaintiff and its counsel are entitled. This Motion also asks the Court to determine

that the expenses of Lead Plaintiff are "reasonable" under the PSLRA. 15 U.S.C. §78u-4(a)(4).

The Court's determination of whether the request is "fair and reasonable" may not be

overturned on review unless there is an "abuse of discretion." *Brantley v. M.F. Surles*, 804 F.2d 321,

327 (5th Cir. 1986). Moreover, any specific findings of the Court concerning the "*Johnson* factors"

may not be set aside unless they are found "clearly erroneous" under Rule 52 of the Federal Rules of

Civil Procedure. *Id.*

## IV. THE REQUESTED FEE SHOULD BE AWARDED BASED ON A PERCENTAGE OF THE RECOVERY OBTAINED

### A. Lead Plaintiff's Counsel Are Entitled to a Fee From the Common Fund They Created

Courts have long recognized that attorneys who represent a class and achieve a benefit for

class members are entitled to be compensated for their services, and that where a class plaintiff

successfully recovers a fund the costs of litigation should be spread among the fund's beneficiaries.

Under this "common fund" doctrine, established more than a century ago in *Trustees v. Greenough*,

105 U.S. 527 (1882), attorneys who obtain a recovery for a class in the form of a common fund are

entitled to an award of fees and expenses from that fund as compensation for their work. *See Boeing*

*Co. v. Van Gemert*, 444 U.S. 472, 100 S. Ct. 745 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375,

90 S. Ct. 616 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 59 S. Ct. 777 (1939).

### B. Fees in Common Fund Cases Should Be Based on a Percentage of the Recovery

#### 1. The Supreme Court Has Repeatedly Held that Fees in Common Fund Cases Are Properly Calculated Based on a Percentage of the Recovery

The Supreme Court has consistently held that where a common fund has been created for the

benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on

a percentage-of-the-fund basis. *See, e.g., Greenough*, 105 U.S. at 532; *Cent. R. R. & Banking Co. v.*

- 6 -

*Pettus*, 113 U.S. 116, 124-25, 5 S. Ct. 387 (1885); *Sprague*, 307 U.S. at 166-67; *Boeing*, 444 U.S. at 478-79. Indeed, by 1984 this notion was so well established that the Supreme Court needed no more than a footnote to make this point in *Blum v. Stenson*, 465 U.S. 886, 900 n.16, 104 S. Ct. 1541 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."). *See also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (October 8, 1985) (hereinafter the "*Task Force Report*") (fee awards in common fund cases have historically been computed based upon a percentage of the fund); 1 Alba Conte, *Attorney Fee Awards* §2.02, at 31-32 (2d ed. 1993) (same). The percentage concept is intended to approximate the market by basing the fee award on what private counsel ordinarily would charge in a contingent fee contract. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."). *See also* the Silver Report, submitted herewith, at pp. 9-13.

Despite Supreme Court precedent approving percentage fees in common fund cases, many years ago some lower federal courts began employing an alternative method for calculating fee awards known as the "lodestar/multiplier" method.[7] However, the Supreme Court has *never* adopted the lodestar method in a common fund case. *See Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 963 (E.D. Tex. 2000) (citing *Manual for Complex Litigation* §24.12, at 189 (3d ed. 1995)); *see*

---

[7]      The lodestar approach entails two steps. First, to determine the lodestar, the court multiplies the number of hours reasonably spent on the case by each attorney's reasonable hourly rate. Second, the court adjusts that figure (by applying a multiplier) to reflect such factors as the risks faced and overcome, the contingent nature of the litigation, the result obtained, and the quality of the attorneys' work. *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973) ("*Lindy I*"), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (en banc) ("*Lindy II*").

*also In re Prudential-Bache Energy Income P'ship Sec. Litig.*, No. MDL 888, 1994 WL 150742, at

\*3 (E.D. La. Apr. 13, 1994) ("*Prudential I*") (Compendium, Ex. 10).

**2.    A Majority of Courts of Appeal Have Approved the
Percentage Method**

Since the issuance of the *Task Force Report* in 1985, virtually every circuit court has joined

the United States Supreme Court in approving use of the percentage-of-the-fund method in common

fund cases. *See, e.g., In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire*

*Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55

F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-17 (6th Cir.

1993); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994); *Johnston v. Comerica*

*Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,

19 F.3d 1291, 1296 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994)

(authorizing percentage approach and holding that use of lodestar/multiplier method was abuse of

discretion); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("After reviewing

*Blum*, the [Third Circuit] Task Force Report, and . . . cases from other circuits, we believe that the

percentage of the fund approach is the better reasoned in a common fund case."); *Swedish Hosp.*

*Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) (percentage of the fund recovered is the *only*

permissible measure of awarding fees in common fund cases).

As these and many other courts have noted, the percentage method directly aligns the

interests of the class and its counsel and provides a powerful incentive for efficient prosecution,

thereby benefiting both litigants and the judicial system. For example, in *Kirchoff v. Flynn*, 786 F.2d

320, 325 (7th Cir. 1986), the Seventh Circuit succinctly summarized some of the benefits of the

percentage method:

> The contingent fee uses private incentives rather than careful monitoring to
> align the interests of lawyer and client. The lawyer gains only to the extent his client
> gains. . . . The unscrupulous lawyer paid by the hour may be willing to settle for a

- 8 -

lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants.

The percentage approach is also the most efficient means of rewarding the work of class action attorneys, since it avoids the wasteful and burdensome process of counsel preparing and courts evaluating lodestar-based fee petitions, which the Third Circuit Task Force has described as "cumbersome, enervating, and often surrealistic." *Task Force Report*, 108 F.R.D. at 258; *see also Shaw*, 91 F. Supp. 2d at 964 ("The lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed."); *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933 (1983) (warning that a "request for attorney's fees should not result in a second major litigation").

One of the nation's foremost scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has also concluded that – among its many other benefits – the percentage method is also far superior to the lodestar method in aligning the interests of class counsel with the interests of absent class members. As Professor Silver notes:

> *The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.* It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force. Indeed, it is difficult to find anyone who contends otherwise. No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.
>
> *In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.* The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives. The contingent percentage approach accomplishes this.

Charles Silver, *Class Actions in the Gulf South Symposium: Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809, 1819-20 (2000) (emphasis added; footnotes

omitted).[8]  This is particularly true in PSLRA cases such as this one where Congress empowered sophisticated lead plaintiffs with the ability to select counsel and negotiate the type and terms of their fee arrangement with class counsel.

As the District of Columbia Circuit has stated: "We adopt a percentage-of-the-fund methodology . . . because it is more efficient, easier to administer, and more closely reflects the marketplace." *Swedish Hosp.,* 1 F.3d at 1270.[9]

### 3. Numerous District Courts in This Circuit Have Used the Percentage Method to Determine Reasonable Attorneys' Fees

Anticipating the trend away from the lodestar method, Judge Vance of the Fifth Circuit stated in his separate opinion in *Foster v. Boise-Cascade, Inc.,* 577 F.2d 335, 337 n.1 (5th Cir. 1978):

> [I]f mechanically applied, the hourly rate approach almost inevitably leads to an unsatisfactory result in this type of litigation.  This method of compensation – which equates professional services to those of laborers and mechanics – frequently has little or no relationship to the value of the services performed in anything but the most routine work.  A flash of brilliance by a trial lawyer may be worth far more to his clients than hours or days of plodding effort.  Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is

---

[8]     Similarly, one of the country's leading securities law scholars has argued that a percentage of the gross recovery is the only reasonable method of awarding fees in common fund cases:

> If one wishes to economize on the judicial time that is today invested in monitoring class and derivative litigation, the highest priority should be given to those reforms that restrict collusion and are essentially self-policing.  The percentage of the recovery fee award formula is such a "deregulatory" reform because it relies on incentives rather than costly monitoring.  Ultimately, this "deregulatory" approach is the only alternative . . . .

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 724-25 (1986).

[9]     The PSLRA also clearly recognizes the propriety of using the percentage method. "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable *percentage* of the amount of any damages and prejudgment interest actually paid to the class." *See* 15 U.S.C. §78u-4(a)(6) (emphasis added).

worth only one-sixth that performed by his marginal colleague who requires an hour and a half for the same operation.

In fact, "since *Blum* was decided [in 1984], there has been no Fifth Circuit decision that would preclude this Court from employing the percentage of the fund approach endorsed in *Blum* and the circuit and district court decisions that followed and applied *Blum*." *Prudential 1*, 1994 WL 150742, at *4 (Compendium, Ex. 10); *see also Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 531 (N.D. Miss. 2003) ("A percentage fee approach, as opposed to a lodestar computation, is the preferred method for determining awards of attorneys' fees in common fund, or class action, cases."); *Shaw*, 91 F. Supp. 2d at 967 n. 15 ("the Fifth Circuit has *never* . . . reversed a district court judge's decision to award a fee as a percentage") (emphasis in original); *Longden v. Sunderman*, 979 F.2d 1095, 1100 n.11 (5th Cir. 1992) (affirming district court's percentage fee award in securities class action noting that the district court stated its preference for the percentage of recovery approach "as a matter of policy").

Accordingly, numerous district courts within the Fifth Circuit have applied the percentage-of-recovery method in awarding fees. The opinions in *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 500 (N.D. Miss. 1996), *Shaw*, 91 F. Supp. 2d at 966-67 and *Di Giacomo v. Plains All Am. Pipeline*, No. H-99-4137, 2001 U.S. Dist. LEXIS 25532, at *17-*18 (S.D. Tex. Dec. 19, 2001) (Compendium, Ex. 4), list numerous class action cases as examples.

## C. Lead Plaintiff's Counsel's Percentage Fee Request Enjoys a "Presumption of Reasonableness"

Passage of the PSLRA "shift[ed] the underpinnings of our class action attorneys fees jurisprudence in the securities area." *Cendant*, 264 F.3d at 282. In a PSLRA case, a fee request, which has been approved and endorsed by properly-appointed lead plaintiffs, enjoys a "presumption of reasonableness." *Id*. at 220, 283. In *Cendant*, the court held that the district court abused its discretion by invalidating a fee agreement negotiated between counsel and three institutional

- 11 -

investors, in favor of a sealed-bid auction for legal services. In so holding, the court explicitly recognized that, in enacting the PSLRA, Congress expressed its strong belief that an institutional lead plaintiff would be in a better position than the court to protect the interests of the class by monitoring lead counsel throughout the litigation and by negotiating a reasonable fee for counsel's representation. *Id.* at 276 (holding that Congress believed that "institutional investors would likely do a better job than courts at selecting, retaining, and monitoring counsel than courts have traditionally done"). Accordingly, the court held that a fee agreement negotiated between properly selected lead plaintiff and its counsel should be accorded a "presumption of reasonableness":

> [U]nder the PSLRA, courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel. . . . This presumption will ensure that the lead plaintiff, not the court, functions as the class's primary agent vis-à-vis its lawyers.

*Id.* at 282. *See also Global Crossing*, 225 F.R.D. at 466 ("[I]n class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable."); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 432 (D.N.J. 2004) (same).

Here, Lead Plaintiff negotiated a graduated fee arrangement with its chosen counsel at the beginning of the case that results in an 8.7257% fee.[10] In fulfillment of its duties in accordance with the contemplation of Congress and under the PSLRA, Lead Plaintiff has worked with counsel throughout the prosecution and settlement of the Litigation, is familiar with the work done by counsel, and it not only negotiated the requested fee at the beginning of the case but also supports the fee request presently before the Court based on the result obtained. *See* Holst Declaration. The fee

---

[10]    The agreement with The Regents provides for an 8% fee on recoveries up to $200 million, 9% on recoveries between $200 and $400 million and 10% of any amounts over $400 million.

agreement between the Lead Plaintiff and counsel is "'precisely the type of bargaining that the PSLRA anticipated and to which a court reasonably may give substantial deference.'" *Global Crossing*, 225 F.R.D. at 468 (citation omitted). Therefore, the negotiated fee is the appropriate fee request to be submitted to the Court for it reflects the exercise of the power and responsibility vested in lead plaintiffs by Congress.

The fee structure utilized by the Lead Plaintiff here is entitled to deference for another reason – it was designed to incentivize counsel to achieve the maximum result possible for the Settlement Class and in retrospect, it is clear that the fee agreement accomplished its goal. It provides that counsel receive increasing percentages of the common fund only on those amounts recovered above the prior tier. It is axiomatic that the "last" dollars of a settlement are the most difficult to obtain. Silver Report at pp. 41-42. Here, Lead Counsel were given an appropriate incentive to accomplish just that. We submit that that incentive worked with spectacular results and justifies the requested fee.

### D. The Requested Percentage is Fair and Reasonable and is Conservative When Compared to Awards in Other Cases From This Circuit

The requested fee award of 8.7257% of the Settlement Amount is significantly less than awards made in similar cases. *See, e.g., Shaw*, 91 F. Supp. 2d at 972 ("based on the opinions of other courts and the available studies of class action attorneys' fees awards (such as the NERA study), this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to [33-1/3%] have been routinely awarded in class actions"); *Prudential I*, 1994 WL 150742, at *1 (same) (Compendium, Ex. 10); *Plains*, 2001 U.S. Dist. LEXIS 25532, at *28 (approving 30% fee) (Compendium, Ex. 4); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving 30% fee); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions.") (citing numerous cases), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

- 13 -

### E.   A 8.7257 Percent Award Here Is Conservative in Comparison with Other Pre and Post-PSLRA Securities Class Action Fee Awards

The requested fee is in line with an analysis of fee awards in class actions conducted in 1996 by National Economic Research Associates, an economics consulting firm. Using data from 433 shareholder class actions, the study reports on the issue of attorneys' fees: "Regardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996) (Compendium, Ex. 17). The average attorney fee as a percentage of the settlement in this Circuit was 30.73%. *Id.* at Table 12b. In cases where very large recoveries have been obtained, percentage fees substantially above those requested here have been awarded. *See* Silver Report at pp. 45-47, 57-65.

As the court observed in *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 196-97 (E.D. Pa. 2000) (in awarding a 30% fee and criticizing the use of any declining "sliding scale" fee regimen: "This court respectfully concludes that such an approach tends to penalize attorneys who recover large settlements. More importantly, it casts doubt on the whole process by which courts award fees by creating a separate, largely unarticulated set of rules for cases in which the recovery is particularly sizable." The sliding scale also "fails to appreciate the immense risks undertaken by attorneys in prosecuting complex cases in which there is a great risk of no recovery. Nor does it give sufficient weight to the fact that 'large attorneys' fees serve to motivate capable counsel to undertaken these actions.'" *Id.* at 197 (citation omitted). The *Ikon* court would not reduce the attorneys' fee award in a large settlement "simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent." *Id.* at 196. *See also* Silver Report at p. 16 ("Although judges sometimes apply fee caps and declining contingent percentages, neither market transactions nor economic reasoning provide much support for these practices.").

## V. THE REASONABLENESS OF THE PERCENTAGE FEE REQUESTED IS CONFIRMED BY AN ANALYSIS OF THE *JOHNSON* FACTORS

While Lead Plaintiff's counsel submit that the fee structure negotiated by the Lead Plaintiff is the appropriate method to determine counsel's fee, application of the *Johnson* factors confirms that the requested fee is fair and reasonable. Some district courts within the Fifth Circuit have applied a hybrid – or "crosscheck" – approach in analyzing the fairness and reasonableness of requested fees. These courts have used the percentage method to set an initial percentage fee, and then adjusted that fee up or down based on the "*Johnson* factors." *See In re Harrah's Entm't*, No. 95-3925 Section "N," 1998 U.S. Dist. LEXIS 18774, at *20-*21 (E.D. La. Nov. 25, 1998) (Compendium, Ex. 9); *see also Shaw*, 91 F. Supp. 2d at 967-68. Application of the *Johnson* factors as a cross-check amply supports the fairness and reasonableness of the percentage fee agreed to.

The twelve *Johnson* factors are:

(1) The time and labor required. . . . (2) The novelty and difficulty of the questions. . . . (3) The skill requisite to perform the legal service properly. . . . (4) The preclusion of other employment by the attorney due to acceptance of the case. . . . (5) The customary fee [for similar work in the community]. . . . (6) Whether the fee is fixed or contingent. . . . (7) Time limitations imposed by the client or the circumstances. . . . (8) The amount involved and the results obtained. . . . (9) The experience, reputation, and ability of the attorneys. . . . (10) The "undesirability" of the case. . . . (11) The nature and length of the professional relationship with the client. . . . [and] (12) Awards in similar cases.

*Johnson*, 488 F.2d at 717-19. The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case. *Brantley*, 804 F.2d at 325-26; *Catfish*, 939 F. Supp. at 502 ("not every [*Johnson*] factor need be necessarily considered").

- 15 -

**A.** **The Requested Percentage Fee Is Fair and Reasonable Based Upon an Analysis of the *Johnson* Factors**

**1.** **Time and Labor Required**

The extensive effort required to prepare this case for trial is summarized above and detailed in the Howes Declaration. However, one of the criticisms of the use of attorney time as a key factor in determining an attorney's fee award, which has led to the substantial abandonment of the lodestar method in common fund cases, is that it encourages delay, inefficiency and recalcitrance towards early settlement.[11] In contrast, the percentage method motivates class counsel to maximize the result because they are paid a straight percentage of what they recover for the class. *See Harrah's*, 1998 U.S. Dist. LEXIS 18774, at *15 ("Because counsel prosecuted this action on a contingent fee basis, the Court would rather focus on results obtained. To overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services.") (Compendium, Ex. 9).

With respect to a lodestar "cross-check," to compare the reasonableness of the percentage fee to the time expended, as set forth in the declarations of plaintiffs' counsel, submitted herewith, over 26,607 hours of attorney and paraprofessional time were expended in the prosecution of this litigation. The resulting lodestar is $10,162,041.75. The requested fee represents a multiplier of 4.04 of the lodestar. As Professor Silver concludes, the multiplier here "is probably too small." Silver Report at p. 75. The multiplier also compares favorably with this Court's award in *In re Dynegy, Inc. ERISA Litig.*, Civil Action H-02-3076 (S.D. Tex. Dec. 10, 2004) (awarding a 25% fee of a $30.75 million settlement resulting in a 4.37 multiplier) (Compendium, Ex. 8), and Judge Harmon's award in *In re Waste Management, Inc. Sec. Litig.*, Master File No. H-99-2183 (S.D. Tex.

---

[11] *See* Jerold S. Solovy, Laura A. Kaster and James B. Sowerby, *Attorneys' Fees in Common Fund Cases: The Percentage Method is Back, in Securities Class Actions: Abuses and Remedies*, 145, 147 (National Legal Center for the Public Interest 1994).

May 1, 2002) (Compendium, Ex. 12) (awarding a fee negotiated with and approved by an institutional lead plaintiff of 7.93% of a $457 million settlement which resulted in a 5.3 multiplier). A multiplier here of 4.04 is amply justified by the excellent result obtained and the services performed in the face of great risk.

### 2. Novelty and Difficulty of the Issues

Courts have recognized that the novelty and difficulty of the issues raised in a case is a significant factor to be considered in making a fee award. From the outset, this post-PSLRA action was a difficult and highly uncertain undertaking, which never involved any acknowledgements of wrongdoing by the Defendants, and there was no assurance that the Litigation would be successful at trial or on appeal. Indeed, courts have properly recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *Ikon*, 194 F.R.D. at 194; *see also Goldstein v. MCI Worldcom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and WorldCom arising out of a massive securities fraud that resulted in a $685 million write-off of accounts receivable, for which Ebbers was later convicted). In addition to being factually complex, the case also involved numerous complex and unsettled questions of law under the PSLRA which the Fifth Circuit has yet to decide, and which have caused numerous splits among the circuit courts that have interpreted the statute.[12]

---

[12]    Although there is continuing debate as to the extent to which the PSLRA heightened previously existing standards for pleading scienter, there is no doubt that numerous other provisions of the PSLRA have made these cases more difficult for plaintiffs. *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353 (5th Cir. 2004). For example, the PSLRA (a) implemented new protections for certain forward-looking statements; (b) imposed a mandatory stay of discovery on plaintiffs; (c) replaced joint and several liability for most defendants; and (d) contained new "look back" provisions designed to reduce recoverable damages.

Assuming Lead Plaintiff was able to prove liability, it still would also unquestionably have had to confront expert testimony by Defendants that any damages the Class suffered were not caused by any alleged misleading statements – and that Lead Plaintiff's models for calculating damages (even if liability were established) are invalid in the wake of Supreme Court cases such as *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and *Dura Pharms., Inc. v. Broudo*, __ U.S. __, 125 S. Ct. 1627 (2005) – which could severely reduce the amount of recoverable damages. To the extent that Defendants could prevail on issues relating to liability or show that any assumptions made by Lead Plaintiff's experts regarding damages were incorrect or unreliable or could show that any portion of the market drop was due to other factors, Lead Plaintiff's claimed damages could be significantly reduced. Moreover, the reaction by a jury to such complex testimony is highly unpredictable and a jury could have very well sided with Defendants' experts. Thus, there was a real risk that even if Lead Plaintiff was successful in proving liability, a jury could have awarded damages in an amount far less than the proposed settlement or none at all.

### 3. The Skill Required to Perform the Legal Services Properly

As the foregoing suggests, this Litigation required considerable skill and experience to successfully conclude. This case required a determined investigation, the ability to develop facts and creative legal theories, and the skill to respond to a host of legal and factual defenses.

Lead Plaintiff's counsel demonstrated that notwithstanding the barriers erected by the PSLRA, they would develop evidence to support a convincing case. During the settlement negotiations, Lead Plaintiff's counsel demonstrated a willingness to continue the Litigation rather than accept a settlement that was not in the best interests of the Class. Based upon Lead Plaintiff's counsel's diligent efforts on behalf of the Class and their skill, Lead Plaintiff's counsel were able to negotiate a very favorable result for the Class.

- 18 -

In addition, Dynegy was represented by highly experienced lawyers from a prominent and well-respected law firm, Haynes & Boone. The standing of opposing counsel should be weighed in determining the fee, because such standing reflects the challenge faced by plaintiffs' attorneys. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976). The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation. Accordingly, this factor also supports the requested percentage. *Shaw*, 91 F. Supp. 2d at 970.

### 4.    Preclusion of Other Employment

The time spent by Lead Plaintiff's counsel on this case was at the expense of time that counsel could have devoted to other matters. In fact, some twenty attorneys were assigned work on this case or participated in the day-to-day litigation of the case, and additional attorneys would be assigned to the case if needed. This factor supports the requested percentage.

### 5.    The Customary Fee

Lead Counsel's application for a fee award of 8.7257% of the Settlement Amount is below the range normally awarded in contingent cases. In local, regional and national markets, complex commercial cases require a contingent fee between 30 and 40 percent of the gross recovery. As Justices Brennan and Marshall observed in their concurring opinion in *Blum*: "'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.'" *Blum*, 465 U.S. at 903* (citation omitted). *See also Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *2 (E.D. La. May 18, 1994) ("*Prudential II*") ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases.") (Compendium, Ex. 11). In securities cases against brokers, contingency fees are in excess of 35%. *See* Mark Gimein,

- 19 -

*When Stock Tips Go Bad, Is the Broker to Blame?*, N.Y. Times, June 5, 2005, at Business Section, p. 3 ($525,000 was awarded to plaintiff and $200,000 of that went to his lawyer).

### 6. Whether the Fee Is Fixed or Contingent

Lead Plaintiff's counsel undertook this Litigation on a contingent fee basis, assuming a substantial risk that the Litigation would yield no recovery and leave them uncompensated. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.

Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. Subsequent to the passage of the PSLRA, many cases in this Circuit have been dismissed at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's pleading standards. Silver Report at pp. 21-22. Approximately 75% of this Circuit's reported PSLRA decisions involving the adequacy of pleadings in securities fraud cases have upheld their dismissal, including the class action arising out of the WorldCom debacle. *See, e.g., Goldstein*, 340 F.3d 238. Even plaintiffs who get past summary judgment and succeed at trial may find their judgment overturned on appeal or on judgment notwithstanding the verdict.[13]

---

[13]     *See, e.g., Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict) (Compendium, Ex. 6); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment n.o.v. was denied, on appeal the judgment was reversed and the case was dismissed – after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (multimillion

- 20 -

Lead Plaintiff's counsel have received no compensation to date and have incurred significant expenses in prosecuting this Litigation for the benefit of the Settlement Class. Any fee award or expense reimbursement has always been at risk and completely contingent on the result achieved. Thus, the contingent nature of the Litigation supports the requested percentage.

## 7. Time Limitations Imposed by the Client or Circumstances

As the Howes Declaration details, until the October 2004 scheduling conference, Lead Counsel and Defendants all believed this case would have the standard components: a discovery period, which the parties had agreed would be about 12 months long and the Court called that "far too liberal"; and then a pre-trial period in which to actually prepare for trial. Once we all embarked on the accelerated – Draconian in the Court's words – schedule, with a May 9 trial date, discovery and pretrial preparation became one. In fact, the Court's words, in commenting on the etched-in-stone trial date and the short time left to get there, proved truer every day of the five months between the scheduling conference and the settlement: "Gentlemen, all of you had another job until today."

## 8. The Amount Involved and Results Achieved

The eighth *Johnson* factor – the amount involved and the results achieved – is entitled to particular weight when, as in this case, the efforts of counsel were instrumental in realizing a high recovery on behalf of the class. *See In re Terra-Drill P'ships Sec. Litig.*, 733 F. Supp. 1127, 1129 (S.D. Tex. 1990) ("[t]he factors enumerated by *Johnson* . . . emphasize 'the results obtained'"). The Supreme Court in *Hensley*, 461 U.S. at 436, recognized that in making a fee award the "most critical factor is the degree of success obtained." Here, the Settlement provides substantial monetary and non-monetary benefits to the Class. The Settlement provides for $474,050,000 in cash and stock

---

dollar judgment reversed after lengthy trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970) (judgment for $145 million overturned after years of litigation and appeals), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973).

(the eighth largest post-PSLRA securities class action settlement and the second largest in this District) and the involvement of The Regents in the process by which two Dynegy director will be selected.  By any measure, the Settlement represents an excellent resolution of the Litigation.

### 9.    The Experience, Reputations and Ability of the Attorneys

Lead Plaintiff's counsel's efforts in bringing this Litigation to a successful conclusion are the best indicator of the experience and ability of the attorneys involved.  That Lead Counsel have managed the Litigation in a disciplined and pragmatic fashion confirms that this Litigation was ably prosecuted for the benefit of the Class.  The experience of the law firms that represented Lead Plaintiff in the prosecution of this case is set forth in the accompanying declarations of counsel.

### 10.    The Undesirability of the Case

The issues presented in this Litigation rendered the case inherently risky, if not "undesirable" from the start.  When counsel undertook representation of Lead Plaintiff and the Class in this Litigation, it was with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts.  To say this case was risky when Lead Plaintiff's counsel accepted this retention is an understatement, and the risks Lead Plaintiff's counsel faced must be assessed as they existed at the time counsel undertook the Litigation and not in light of the recovery ultimately achieved.  Silver Report at pp. 14-20.  *See, e.g., Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (the riskiness of a case must be judged *ex ante* not *ex post*).  The "undesirability" of the Litigation supports the requested percentage.

### 11.    Nature and Length of Relationship With the Client

As noted above, the Court-appointed Lead Plaintiff (represented by the same counsel in *Enron*) negotiated a fee agreement with Lead Counsel at the beginning of the case.  This agreement provided for attorneys' fees on a graduating scale, and the resulting percentage for the recovery

- 22 -

obtained here is 8.7257%, the percentage sought by this application. With respect to this agreement

and support for the requested fee, the Third Circuit Task Force recently concluded:

> The Task Force believes, however, that the deference to the empowered plaintiff's choice of *counsel* in PSLRA cases should extend to the *ex post* review of the fee agreement in those cases. The PSLRA establishes a model of client control that extends not only to appointment of counsel but also to monitoring of counsel and negotiation of the fee. The Task Force concludes, therefore, that strict scrutiny of the fee agreement is inconsistent with the client-driven litigation model established in the PSLRA. This means that a court should presume that the fee is reasonable when it is the result of an agreement between the "most adequate" plaintiff and chosen counsel.

Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340, 425 (Jan. 15,

2002) (emphasis in original).

### 12. Awards in Similar Cases

As demonstrated above, the requested fee percentage is significantly less than the

percentages that have been repeatedly awarded by courts in this Circuit and District as well as

numerous other similar cases throughout the country.

## VI. THE REACTION OF THE CLASS CONFIRMS THAT THE REQUESTED FEE IS REASONABLE

The Notice that was mailed to more than 80,000 potential Class Members advised them that

counsel would apply for a fee award of up to 9% of the Settlement Amount and expenses not to

exceed $3,200,000, and that Class Members could object to the fee and expense application. As far

as we are aware, there has been no proper or timely objection to the fee request. Given the size of

the Class, "such a low level of objection is a 'rare phenomenon.'" *Rite Aid*, 396 F.3d at 305 (citation

omitted).

## VII. IMPORTANT PUBLIC POLICY CONSIDERATIONS ALSO SUPPORT THE REQUESTED FEE AWARD

The federal securities laws are remedial in nature and, in order to effectuate their purpose of

protecting investors' private lawsuits, are to be encouraged. *See Basic Inc. v. Levinson*, 485 U.S.

224, 108 S. Ct. 978 (1988); *Bateman, Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 105 S. Ct.

2622 (1985); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S. Ct. 683 (1983). In

*Prudential II*, the court noted:

> In complex securities class actions and shareholder derivative litigation, able counsel for plaintiffs can be retained only on a contingent basis. A large segment of the investing public would be denied a remedy for violations of the securities laws and breaches of fiduciary duty by public companies and those entrusted with their stewardship if contingent fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken and the delay before any compensation is received.

*Prudential II*, 1994 WL 202394, at *8 (Compendium, Ex. 11).

Private attorneys should be encouraged to take the risks required to represent those who

would not otherwise be protected from securities fraud. Accordingly, an award of the fee requested

herein would be fully consistent with important public policy considerations.

## VIII. THE EXPENSES FOR WHICH REIMBURSEMENT IS SOUGHT WERE REASONABLY INCURRED AND SHOULD BE REIMBURSED

Lead Plaintiff's counsel also request reimbursement for the reasonable and necessary

expenses which they advanced to prosecute this Litigation. These expenses total $3,242,544.93,

exceed the expense "cap" of $3,200,000 set forth in the Notice, and are set forth in the declarations

of Lead Plaintiff's counsel submitted herewith. Each of the expense categories for which

reimbursement is sought is appropriate for payment from a class settlement fund. *See Harrah's*,

1998 U.S. Dist. LEXIS 18774 (Compendium, Ex. 9); *Catfish*, 939 F. Supp. at 503. No opposition to

the expenses requested has been received. Therefore, the requested expenses should be awarded. *In

re Shell Oil Refinery*, 155 F.R.D. 552, 574 (E.D. La. 1993); *see also Belman*, No. H-91-3767

(Compendium, Ex. 2); *Sims*, ¶¶98,134, at 98,976 (Compendium, Ex. 15).

Finally, under the PSLRA, the Court may award "reasonable costs and expenses (including

lost wages) directly relating to the representation of the class to any representative party serving on

behalf of a class." 15 U.S.C. §78u-4(a)(4). The Lead Plaintiff spent a significant amount of time

representing the Classes throughout the course of the Litigation and incurred such costs and

- 24 -

expenses and has submitted a declaration in support of reimbursement in the amount of $305,753. *See* Holst Declaration. The time, effort and expense they committed is encouraged by Congress in enacting the PSLRA and was of great help in bringing about a very significant benefit to the Class. The amount requested is reasonable and should be approved by the Court.

## IX.    CONCLUSION

Based on the foregoing and upon the entire record herein, Lead Plaintiff's counsel respectfully request that the Court award attorneys' fees in the amount negotiated between Lead Plaintiff and Lead Counsel, reimburse expenses in the amount of $3,200,000, plus interest on the award at the same rate paid on the Settlement Amount, and reimburse The Regents in the amount of $305,753 as allowed by the PSLRA.

DATED:  June 30, 2005                              Respectfully submitted,

SCHWARTZ, JUNELL, GREENBERG
  & OATHOUT, LLP
ROGER B. GREENBERG
Federal I.D. No. 3932
Texas Bar No. 08390000


                                                   ROGER B. GREENBERG

Two Houston Center
909 Fannin, Suite 2000
Houston, TX  77010
Telephone:  713/752-0017
713/752-0327 (fax)

PROVOST & UMPHREY LAW FIRM, LLP
WALTER UMPHREY
JOE KENDALL
Texas Bar No. 11260700
3232 McKinney Avenue, Suite 700
Dallas, TX  75204
Telephone:  214/744-3000
214/744-3015 (fax)

**Co-Liaison Counsel**

- 25 -

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
  Attorney-in-Charge
KEITH F. PARK
DARREN J. ROBBINS
HELEN J. HODGES
BYRON S. GEORGIOU
JAMES I. JACONETTE
MICHELLE M. CICCARELLI
JAMES R. HAIL
ANNE L. BOX
JOHN A. LOWTHER
ALEXANDRA S. BERNAY
MATTHEW P. SIBEN
ROBERT R. HENSSLER, JR.
ANDREA N. SALOW
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
G. PAUL HOWES
JERRILYN HARDAWAY
Federal I.D. No. 30964
Texas Bar No. 00788770
1111 Bagby, Suite 4850
Houston, TX 77002
Telephone: 713/571-0911


LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
REGINA M. AMES
KATHERINE C. SPLAN
9601 Wilshire Blvd., Suite 510
Los Angeles, CA 90210
Telephone: 310/859-3100
310/278-2148 (fax)

**Lead Counsel for Plaintiffs**

THE BASKIN LAW FIRM
JAMES D. BASKIN
Federal I.D. No. 27093
Texas Bar No. 01872050
300 W. 6th Street, Suite 1950
Austin, TX 78701
Telephone: 512/381-6300
512/322-9280 (fax)

**Additional Counsel for Lead Plaintiff**
S:\Settlement\Dynegy.Set\BRF FEES 00022088.doc

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing LEAD PLAINTIFF'S COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES document has been served by sending a copy via electronic mail to www.dynseclit.com on June 30, 2005 pursuant to the Court's service orders.

_____
MO MALONEY